IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| MORRIS PUBLISHING GROUP, LLC, et al., | Case No. 10-10134 (JSD) |
| Debtors. | Jointly Administered |

**APPLICATION FOR AN ORDER AUTHORIZING THE DEBTORS TO EMPLOY AND RETAIN CRG PARTNERS GROUP LLC AS FINANCIAL ADVISOR, PURSUANT TO 11 U.S.C. §§ 327(a), 328(a) AND 1107, *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby submit this Application (the "Application") for entry of an order, in substantially the form attached hereto as Exhibit C, authorizing the Debtors to employ and retain CRG Partners Group LLC ("CRG") as financial advisor to the Debtors, pursuant to sections 327(a), 328(a) and 1107 of title 11 of the United States Code (the "Bankruptcy Code"), *nunc pro tunc* to January 19, 2010 (the "Petition Date").  In support of the Application, the Debtors submit the Declaration of Michael J. Epstein (the "Epstein Declaration"), a copy of which is attached hereto as Exhibit A and incorporated herein by reference.  In further support of this Application, the Debtors respectfully represent as follows:

**STATUS OF THE CASE AND JURISDICTION**

1. On the Petition Date, the Debtors commenced their respective reorganization cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  By an order entered on the Petition Date, the Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being administered jointly.

2. The Debtors are continuing in possession of their respective properties and are continuing to operate and maintain their businesses as debtors in possession pursuant to

NGEDOCS: 1683713.3

sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or official committee has been appointed in these cases.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND OF THE DEBTORS

4. Morris Publishing Group, LLC ("Morris Publishing") and its affiliated Debtors are part of a private media business headquartered in Augusta, Georgia, that has been owned and operated by the William S. Morris III family for three generations. The Debtors own and operate 13 daily newspapers and more than three dozen nondaily newspapers in the Southeast, Midwest, Southwest and Alaska, as well as city magazines and free community publications.

5. In September 2009, to reduce the Debtors' substantial debt load and address liquidity concerns threatening the long-term viability of the company, the Debtors reached agreement with an ad hoc committee (the "Ad Hoc Committee") of holders of 7% Senior Subordinated Notes due 2013 (collectively, the "Old Notes") on the general terms of a comprehensive balance sheet restructuring (the "Restructuring"). Pursuant to an October 30, 2009 Restructuring Support Agreement (as subsequently amended), the Restructuring was to occur either through (a) an out-of-court offer (the "Exchange Offer") to acquire all $278.5 million in principal amount of outstanding Old Notes for $100 million in aggregate principal amount of Floating Rate Secured Notes due 2014 or (b) alternatively, through cases filed under chapter 11 of the Bankruptcy Code and confirmation of a prepackaged chapter 11 plan (the "Plan"). The closing of the Exchange Offer was conditioned upon, among other things, at least 99% of the aggregate principal amount of Old Notes being validly tendered and not withdrawn.

6. On December 14, 2009, the Debtors launched the Exchange Offer and also began soliciting votes to accept or reject the Plan, which contemplates a full recovery for all allowed claims other than those held by holders of Old Notes. Because less than 99% of the aggregate principal amount of Old Notes were validly tendered and not withdrawn, a condition to closing the Exchange Offer was not satisfied. Nonetheless, the Plan was accepted overwhelmingly – nearly 93% in number and more than 98% in amount of those who voted – by the only class of creditors entitled to vote on the Plan. Accordingly, on the Petition Date, (a) the Debtors filed the Plan and its accompanying disclosure statement, and (b) the Court scheduled a hearing for February 17, 2010 regarding the adequacy of the disclosure statement, approval of the solicitation procedures and confirmation of the Plan. The Debtors believe that the Plan, once confirmed, will rationalize their balance sheet in a way that allows them to service their debt, fund future operations and support their long-term business plans.

## RELIEF REQUESTED

7. By this Application, the Debtors seek authorization to employ and retain CRG as their financial advisor, including in connection with efforts to confirm the Plan, pursuant to sections 327(a), 328(a) and 1107 of the Bankruptcy Code, *nunc pro tunc* to the Petition Date, upon the terms and conditions contained in that certain engagement letter, dated as of January 18, 2009, by and between CRG and Morris Publishing (the "Engagement Letter"), a copy of which is attached hereto as Exhibit B and incorporated by reference herein.

## CRG'S QUALIFICATIONS

8. CRG is well qualified to assist the Debtors on the matters for which the Debtors propose to retain it. CRG specializes in financial advisory work in corporate restructurings and distressed situations. The firm is a recognized leader in the restructuring field because of its innovative solutions to complex financial restructurings, and it has experience both in-court and

out-of-court company affairs. CRG's employees have advised debtors, creditors, equity constituencies and government agencies in many complex financial reorganizations that are similar to the Restructuring contemplated by the Plan.

9. Moreover, CRG is very familiar with the Debtors' financial and business operations. Immediately upon its retention, pending preparation of this Application, CRG began providing the services described in the Engagement Letter. Accordingly, CRG's professionals have worked closely with the Debtors' management and other professionals and have become well acquainted with the Plan and the Debtors' operations, debt structure, creditors, business and operations and related matters, all of which will assist CRG in providing effective and efficient services in these chapter 11 cases.

10. With its experienced senior professionals and familiarity of the Debtors' businesses, CRG fulfills a critical role that complements the services offered by the Debtors' other restructuring professionals.

## SERVICES TO BE PROVIDED

11. The Debtors seek to employ CRG to provide the following services described in the Engagement Letter,[1] as necessary and requested:

> a. assistance in generation of the necessary information and direct preparation of the Schedules and Statement of Financial Affairs, if and as required by the bankruptcy court;
>
> b. assistance in the preparation of monthly operating reports in the form required by the United States Trustee and any applicable guidelines;
>
> c. give advice to the client related to the establishment of postpetition books and records;

---

[1] Capitalized terms used herein but not otherwise defined herein shall have the meanings set forth in the Engagement Letter. The summary of the Engagement Letter is provided solely for the benefit of the Court and parties in interest. To the extent the summary and the terms of the Engagement Letter conflict in any way, the terms of the Engagement Letter shall control.

  d. support of general needs of Client's counsel as needed during the process;

  e. support of the Client any interaction with the US Trustee's office, as well as the representatives of the Unsecured Creditors Committee (should such be formed); and

  f. any other support as may be requested by the Client.

## **PROFESSIONAL COMPENSATION**

12. Subject to this Court's approval of the Application, CRG intends to (a) charge the Debtors for its services on an hourly basis in accordance with its ordinary and customary rates in effect on the date such services are rendered, and (b) seek reimbursement of actual and necessary costs and expenses incurred by CRG in connection with these cases. CRG has informed the Debtors that its hourly rates are subject to periodic adjustment from time to time in accordance with CRG's established billing practices and procedures. CRG's billing rates for those professionals anticipated to perform the majority of services in these cases range from $250 to $675 per hour, depending on the professional assigned to the project.

13. In addition to the hourly rates set forth above, CRG customarily charges its clients for all costs and expenses incurred in connection with a client's case. These charges may include, among other things, long-distance telephone and telecopier charges, mail and express mail charges, special or hand delivery charges, filing fees, photocopying charges, travel expenses and expenses for "working meals." CRG believes that it is appropriate to charge these expenses to the clients incurring them rather than to increase its hourly rates and thereby spread the expenses to all of them. CRG will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to CRG's other clients and the local rules of this Court (the "Local Rules"). CRG will charge $0.10 per page for photocopies.

14. On January 18, 2010, CRG received a retainer (the "Retainer") in the amount of $50,000.00. Pursuant to the terms of the Engagement Letter, the Retainer will be applied to the

final bill for fees and expenses incurred during the chapter 11 cases.  As of the Petition Date and the date of this Application, none of the Retainer has been applied.  Upon the conclusion of CRG's representation of the Debtors (or as otherwise directed by the Court), CRG will apply the Retainer against any unpaid fees or unreimbursed disbursements, with any unapplied portion of the Retainer to be promptly returned to the Debtors.  CRG will not apply any portion of the Retainer to postpetition and pre-confirmation fees and expenses without prior approval of the Court.

15. The Debtors have agreed to reimburse and indemnify CRG and certain related parties in accordance with the terms of the Engagement Letter.  The Engagement Letter provides, among other things, that the Debtors will indemnify, hold harmless and defend CRG and its officers, directors, agents, employees and any successors or assigns (collectively, the "<u>Indemnified Parties</u>") for any claim, liability, loss, damage or expense relating to, arising out of or in connection with CRG's engagement by the Debtors; provided, however, that the Debtors "shall not be responsible for any losses, claims, damages, liabilities or expenses of any Indemnified Parties to the extent, and only to the extent, that it is judicially determined that they are due primarily to such Indemnified Party's bad faith, willful misconduct or gross negligence." Appendix to Engagement Letter, at § 8.

## CRG'S DISINTERESTEDNESS

16. To check and clear potential conflicts of interest in these cases, CRG conducted a review of its contacts with the Debtors, their affiliates and certain entities holding large claims against or interests in the Debtors (collectively the "<u>Interested Parties</u>").  The identities of the Interested Parties were provided to CRG by the Debtors and are set forth on <u>Schedule 1</u> to the Epstein Declaration.  CRG's review consisted of a query of the parties listed on <u>Schedule 1</u> within an internal computer database containing names of individuals and entities that are

present or recent former clients of CRG. A summary of the relationships that CRG identified during this process is set forth on Schedule 2 of the Epstein Declaration. CRG has provided and could reasonably be expected to continue to provide services unrelated to the Debtors' cases for various entities shown on Schedule 1. Based on the results of that conflicts search, CRG has informed the Debtors that, as set forth in more detail in the concurrently filed Epstein Affidavit and subject to any explanations and/or exceptions contained therein, CRG (including each of its professionals) (a) does not hold or represent any interest adverse to the Debtors' estates, and (b) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

17.     Despite the efforts described above to identify and disclose CRG's connections with parties in interest in these cases, CRG is unable to state with certainty that every client relationship or other connection has been disclosed. To the extent that CRG discovers any, or enters into any new, material relationship with any Interested Parties, it will supplement this disclosure to the Court promptly.

**BASIS FOR RELIEF**

18.     The standard for a debtor-in-possession to employ professionals is set forth in sections 327(a) and 1107 of the Bankruptcy Code. Those sections provide that a debtor-in-possession, with the Court's approval, may employ professionals "that do not hold or represent an interest adverse to the estate," and that are "disinterested persons." 11 U.S.C. § 327(a); 11 U.S.C. § 1107; see also In re Adam Furniture Indus., 158 B.R. 291, 296 (Bankr. S.D. Ga. 1993) (for professional to be retained, professional must not hold or represent an interest adverse to the estate and must be a disinterested person). A "disinterested person" is defined as one who does not have an interest materially adverse to the interest of the estate, by reason of any direct or indirect relationship with the debtor, or for any other reason. See 11 U.S.C. § 101(14)(e).

19. As set forth above, CRG does not hold or represent an interest adverse to the estate and is a "disinterested person," as such term is defined in the Bankruptcy Code. Moreover, the Engagement Letter was fully negotiated between the Debtors and CRG at arm's-length, and the terms of the Engagement Letter are customary for financial advisors such as CRG for proceedings both out of court and in chapter 11. The Debtors respectfully submit that, given CRG's expertise and knowledge of the Debtors' financial affairs, including the proposed terms of the Restructuring under the Plan, retention of CRG pursuant to the terms of the Engagement Letter is reasonable and in the best interests of the Debtors and their estates..

**NOTICE**

20. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the Southern District of Georgia; (iv) the Internal Revenue Service; (v) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis; (vi) counsel to the administrative agent for the Debtors' prepetition secured lenders; (vii) the indenture trustee with respect to the Debtors' Old Notes; and (viii) counsel to the Ad Hoc Committee. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

**NO PRIOR REQUEST**

21. No previous request for the relief sought herein has been made to this Court or to any other court.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as the Court deems just and proper.

Dated: Augusta, Georgia
       January 26, 2010

Respectfully submitted,

  /s/ Nicholas M. Miller
NEAL, GERBER & EISENBERG LLP
Mark A. Berkoff (Admitted *Pro Hac Vice*)
Nicholas M. Miller (Admitted *Pro Hac Vice*)
Deborah M. Gutfeld (Admitted *Pro Hac Vice*)
Two North LaSalle Street, Suite 1700
Chicago, IL  60602-3801
Telephone: (312) 269-8000
Facsimile: (312) 269-1747

-and-

James T. Wilson, Jr. (Ga. Bar No. 768600)
945 Broad Street, Suite 420
Augusta, GA  30901-1289
Telephone: (706) 722-4933
Facsimile: (706) 722-0472

ATTORNEYS FOR DEBTORS AND DEBTORS IN POSSESSION